Given the order entered in the next case to be called 11711 last week, we've revised the call to docket. Our next case now is agenda number six, People v. Edwards, counsel for the appellant. May it please the Court, Your Honor, Sean O'Toole with the Office of the State Appellate Defender on behalf of the appellant, Walter Edwards. Your Honors, in People v. Ortiz, this Court reaffirmed that successive petitions setting forth the claim of actual innocence are excused from the cause and prejudice test pursuant to People v. Pitzenberger. And further declared that as a matter of procedural and substantive due process, the Post-Conviction Hearing Act must not be read in such a way that could, quote, theoretically could bar a petitioner from filing a freestanding actual innocence claim. Here, an actual petitioner was barred from filing a freestanding actual innocence claim. In this case, Walter Edwards requested leave to file his third and fourth successive post-conviction petitions, both setting forth freestanding claims of actual innocence and supported with documentation corroborating those claims. One of these affidavits was from a co-defendant, Eddie Coleman, who admits his participation in the offense and unequivocally states that Walter was not present for either the planning or commission of the offense. The other two affidavits are from alibi witnesses. Together, these allegations and supporting documentation constitute a well-played claim of actual innocence. The petition rebuts the State's evidence at trial, which involved no physical evidence or eyewitness identifications. Despite the fact that Walter clearly set forth a claim of actual innocence, the Circuit Court applied the cause and prejudice test in direct contravention of this Court's holding in Pitzenberger and denied leave to file. The appellate court affirmed, while rightly acknowledged that an actual innocence claim is excused from showing cause and prejudice, it nevertheless upheld the Circuit Court's decision to deny leave to file. Over dissent, the appellate court majority evaluated the merits of Walter's petition using what essentially amounts to a third-stage standard. It refused to accept non-rebutted allegations as true. It made credibility determinations. And it concluded that Walter's affidavits, specifically his alibi affidavits, were not newly discovered. And it further held that Walter could not show that his claims were more likely than not alter the result on retrial. Your Honors, the appellate court majority Counsel, you want to standard them where it would be minimal pleading requirements, right?  Even where the claim is facially frivolous. Well, the frivolous determination would be made at the first stage, because right now we're just talking about whether the petitioner has a right to file that claim. And pursuant to this Court's interpretation of the Illinois Due Process Clause, specifically the procedural due process right to be heard, a meaningful opportunity to be heard, as this Court explained in Ortiz, includes the right to file what can reasonably be characterized as an actual innocence claim. So if the facts alleged in the petition could reasonably be interpreted as raising an actual innocence claim, and the petition also complies with the remaining requirements of Section 122-2, including the corroborating documents requirement, then that would constitute a well-plagued claim of actual innocence. It would be, though, a threshold standard for facially evaluating successive petitions that's substantially lower than the standard for facially evaluating initial petitions, right? It would only be lower, well, for initial petitions don't even have to meet a standard to be filed. And that's the distinction. Here we're talking about can Walter's successive petitions even be filed without having to make some threshold showing that is, for all intents and purposes, equivalent to the very cause and prejudice test that this Court has specifically held that successive petitioners alleging actual innocence are excused from. So it would be illogical to subject successive petitions raising actual innocence claims to a threshold showing that on the merits when this Court has been clear that they're excused from showing cause and prejudice. And if you look at the threshold showing the appellate court required, it essentially mirrors the cause and prejudice analysis and, furthermore, mirrors the third-stage standard that is applicable to claims that have shown they're not frivolous, have passed the second stage, and have reached the third stage. Several appellate courts have been grappling with this problem, that to show cause is essentially the same as showing newly discovered. To show prejudice is essentially just showing a different result on retrial. Why, under the standard that you're proposing, is the State not correct that there never be any finality? I mean, what incentive would there be not to file an actual innocence claim to get in the door in a successive petition? There's a few points in response to that. One, Ortiz has already recognized that there's a due process right to file a claim of actual innocence, fully aware of the State's finality arguments. Secondly, the State's concern is overstated. The defendant is still going to have to attach supporting documentation to his petition. And the reason I like to frame this initial showing in terms of the gist standard is because the gist standard was specifically designed to determine what type of claim is being raised. For most, for an initial petition, it's going to be whether that claim is arguably constitutional, sufficient to invoke the Act. And if we apply that same standard to actual innocence claims, then a defendant is not going to be able to raise other claims under the guise of actual innocence because his petition is still going to have to be supported by documentation that show that his allegation that he's actually innocent can be corroborated. And in most cases, the defendant won't be able to show that. But whatever standard this Court does apply, there's no question that Walter meets that standard. And the other thing with regard to finality, the State proposes a standard that would involve a heavily scrutinized leave-to-file stage during which the Circuit Court could evaluate the petition on the merits, take longer than 90 days, read all the pleadings. The State envisions this would take more than 90 days because the Court would have to read all the pleadings, read the allegations in light of those pleadings, make these types of legal determinations. For purposes of finality, the defendant's proposed standard is much more efficient. Once the Circuit Court deems the petition to be an actual innocence claim, it would docket the petition, it would go on the 90-day schedule, and if the petition is frivolous, it would be off the Court's docket within 90 days. Now, the other concern with regard to finality was mentioned in Ortiz. The State rules the specter of piecemeal litigation. And this Court did hold that the procedural bars of res judicata would apply to petitions that were filed in a piecemeal fashion. But in that case, the Court held that because the affidavits were new, the defendant had actually alleged actual innocence in a prior petition. But because in this claim of actual innocence, like Walters, he's alleging new evidence that hasn't been heard before, those bars would not apply. But they would apply, and the concerns of finality would be met if the petition was simply raising the same claim. So the only standard to be applied at the leave stage is whether it's a claim of actual innocence. Correct, and I would We don't look to whether there's affidavits attached or anything. I propose that we do. I propose that the petitioner will have to meet the pleading standards of Section 122-2, which requires not only factual allegations that clearly set forth the claim of actual innocence, but supporting documentation that show that the claim is capable of corroboration. And that, again, will allow the State's concerns of finality to be met, while at the same time balancing those concerns with the due process right to access courts with a well-played claim of actual innocence. So then there actually would be two separate stages when frivolous would be viewed. In other words, it would be initially on the leave, and then it goes on the 90-day call, not immediately going to the next stage. Is that right? Well, if we're only looking at the type of claim raised at the leave-to-file stage, we're not reaching the question of whether that claim is indeed frivolous on the legal merits. I thought you said, I thought, maybe I misunderstood you. I thought you said there was an element of considering that you were asking for that. In other words, if there are not affidavits attached, it didn't allow leave to file. If you read, if the Hodges Court explanation of the pleading standards, it makes clear that that involves both factual allegations and corroborating affidavits. And once those are met, you have the gist of a claim. That gist is then analyzed under the legal standard, frivolous and patently without merit. And that should take place at the first stage once that gist of the claim has been filed. So in Walter's case, Walter has sought leave to file two separate successive petitions. One involves an affidavit from a co-defendant and the other alibi affidavits. These, under any standard, these petitions should have been given leave to file. Walter clearly set forth his claim that he's actually innocent, and explaining why the state's only piece of evidence that put him at the scene of the crime, which was his custodial statement, was not true. It was given pursuant to a promise of leniency. It was given when he was at the age of 15 years old, not being able to confer with his grandmother who was waiting at the station prior to his being interviewed by the assistant state's attorney. It was given pursuant to threats from the officer that if he did not provide the statement, he would be given the harshest sentence of all the co-defendants. And it was given after the officer had interviewed other witnesses that had been, or other suspects that had been arrested along with Walter. As the amicus brief exhaustively described, Walter's confession in light of these facts is unreliable, and therefore could easily be overcome by the affidavits that he's supplied along with his post-conviction petition. If we subscribe to the pleading standard, nothing would prevent successive pleadings basically alleging it the same way then. Each one would have to go on to the 90-day docket. Is that correct? As long as those petitions state a claim of actual innocence corroborated by independent supporting documentation, then under Ortiz, which held that any sort of threshold showing that it would potentially bar a claim of actual innocence from being filed would violate procedural and substantive due process. So you file the same one over? No, the same one, if it's the same exact petition, it could be. It appears from Ortiz subject to procedural bars such as res judicata or collateral estoppel. I think as an alternative, and the state seems to suggest that we should look at the possibility of examining the petition, whether it's frivolous and patently without merit, as an alternative. If that were the standard, then those would automatically advance to the second stage, is that correct? Correct. And what's interesting is I propose as an alternative standard the Hodges first-stage standard, which would be the frivolous and patently without merit standard. The state also says it's proposing a frivolous and patently without merit standard, but it wants to define that standard differently than the Hodges court defined it. It wants to define it as a prima facie showing of a compelling claim of actual innocence. Now, on its face, a prima facie showing appears to be the same as a gist standard. It would take as true on its face claims and factual allegations and merely determine whether those are enough to state a claim. But what the state's proposing is an actual evaluation of these claims on the merits, and that appears to be no different from what cause and prejudice requires. So once again, it's illogical to excuse a defendant from having to show cause and prejudice, only to then ask them to make a showing on the merits, particularly where at the pro se pleading stage, this Court has always found that defendants only need to present a limited amount of detail. They need not make legal arguments or cite to legal authority, and that the types of credibility that their factual allegations are going to be taken as true, so the types of credibility determinations that would be required under the state standard, for instance, to determine whether the petition would be enough to warrant a different result on retrial, can't be made on the pleadings alone. And I would just like to go back quickly to why Walter's petition specifically meets any of these standards. As I was saying, the circumstances of Walter's custodial statement, which was once again the only evidence of Walter's presence at the scene, given when he was 15 years old, indicate that it's not reliable. And the state's own evidence at trial substantiate this claim. Alice LaRue testified that she saw Sam Taylor, a person she knew several years, standing outside of her window just before the shooting. Walter's statement didn't say that Sam Taylor was at the scene. More importantly, Gregory Archer, the state's second eyewitness, testified that he saw one man firing from the street, while according to Walter's statement, four men were firing guns at the scene of the crime. So the veracity of Walter's statement depends on the notion that Gregory Archer had seen, had thought he only saw one man firing a gun, when in fact four men were firing a gun. Gregory Archer also saw only two men fleeing the scene. Walter says four people were fleeing the scene. So these types of factual discrepancies lend support to what the amicus described as the unreliability of this confession, particularly in light of the fact that false confessions are occurring more frequently than commonly believed. And this is almost three times as true for juvenile defendants. In one study, studies have shown anywhere between 42% and 55% of the juveniles who have been exonerated in recent years confessed falsely to the crime. In some other circumstances of the confession, no youth officer was present during the interrogation. His grandmother was at the station, but Walter was not allowed to confer with her prior to agreeing to give this statement. And there was also ample time for both fit and contamination between the two weeks that passed at the time of the arrest and from the time of the offense. So was this evidence new, counsel? I mean, wasn't this evidence that was in the defendant's possession? The defendant did not have this evidence in his possession until he actually filed the petitions. Obviously, he knew of his alibi at the time because he was with these two people at the time of his offense. The question is whether it still can be considered newly discovered evidence because it was unavailable to him. All three affiance specifically state in their affidavits they were not willing to come forward earlier, and that's the standard this court should apply when determining whether evidence is newly discovered. Now, using the question of what the question, isn't it a little bit like, you know, had I known that I was not involved in the planning and commission of the crime, I would have never confessed. Well, you said he knew his alibi evidence. In the face of that, he still confessed. Well, he confessed after being confronted repeatedly by police officers who explained to him, according to his factual allegations, that if you don't confess, you'll get the higher sentence. And on the coercion aspect of the confession, that's old news, right? Right. We're not alleging the voluntariness issue, but courts have always viewed the voluntariness issue separate from the reliability issue. And in terms of reliability, those same factors come into play. What's the thinking of a 15-year-old who's in isolation for seven, eight, nine hours, arrested for an offense, told by the police that he's suspected of the offense, and told that other co-defendants are implicating him in that offense? So, again, at this stage, we're getting ahead of ourselves, I think, the question being whether Walter can file his petition. I think the ultimate credibility of those affidavits and whether they can overcome the circumstances of that confession will be made at the third stage, as this court did in Ortiz and in Washington and Morgan, all claims of actual innocence that were eventually resolved at the third stage. It's somewhat important to get ahead of ourselves, because if we go with a different standard other than you're proposing and go with the frivolous standard right at this stage, you should have an opportunity to say why it isn't frivolous. Exactly. And if it's framed in the context of a frivolous claim, certainly it's not fanciful to claim that Walter confessed falsely, knowing what we know now about juvenile confessions. It's not fantastical or delusional to claim that he wouldn't have been able to call his alibi witnesses at trial, because as they're stating, they refused to come forward earlier. And it's not a wholly meritless legal theory to say he's completely innocent of this crime, given that we now have three witnesses. In fact, in his second petition, he included an affidavit from a fourth witness, who also provided exonerating evidence. So as the dissent said below, taking these affidavits is true. It cannot be said that the claim is frivolous. And if this Court has no further questions, I'll reserve the remainder of my time. Thank you, Counsel. Counsel for the affidavit. Please. Again, may it please the Court, Counsel, I am Assistant State's Attorney Tashmere Kelly, on behalf of the people of the State of Illinois. If I could just take a brief moment, I did want to express my sincere gratitude to this Court and to Counsel for their very gracious accommodation of me, and I apologize for any inconvenience that they may have raised. Turning to this case, the question before this Court is simple. What is the proper threshold standard that must be met by individuals at the leave-to-file stage presenting a successive petition with a claim of actual innocence? And has this petitioner met that standard such that the Circuit Court erred in not allowing him to file his third and fourth successive post-convictions? While the question seems simple, finding the answer is more difficult than it seems because there are multiple competing factors which must be taken into consideration in order for there to be a fundamentally fair threshold standard. And to be feasible, any standard must offer the lower courts clear guidance on how to consider these types of claims at the leave-to-file stage, provide them assistance in reviewing these claims efficiently and conscientiously, recognize the importance of finality in criminal proceedings, not only for the state but for the families of the victims, and also to ensure that individuals who are presenting these important claims are given access to the courts as well as judicious consideration of their claims. And it's in considering all of these factors that the state is presenting the threshold suggestion that's in their brief, which is a prima facie showing of a compelling claim of actual innocence. And that's in the context of showing that his claim is not frivolous and patently without merit. And this is, as Petitioner points out, a new standard. It's a new definition of frivolous and patently without merit that's different from the one that this Court set forth in Hodges. But there is a reason for this, and that is that over the past few years and especially post-Ortiz, claims of actual innocence have become more and more commonplace. And there's nothing to suggest that this continued filing of these claims is going to change. And so the people are bringing this standard forth because we truly believe that it is the best test moving forward that balances all of the interests that are necessary to be balanced in guiding the Court in reviewing these claims. The key to this standard is that it ensures that all individuals with potentially meritorious claims will be able to present their claims to the Court. The components of the threshold standard that we're setting forth are identical to those of a valid claim of innocence that this Court set forth in both Washington and Ortiz. So the only claims which would not be able to meet this threshold standard are those which do not fall within the definition of a freestanding claim of actual innocence. By applying this standard, then, this Court would merely be ensuring that the gateway that you opened for petitioners in Washington is not being abused by petitioners attempting to either recycle claims that have already been presented to try to circumvent cause and prejudice, or to present a claim under the rubric of actual innocence when it, in fact, presents no such claim, such as a complaint about the effectiveness of trial counsel or something like that which is presented here, a new alibi witness, which is really a challenge to the sufficiency of the evidence. Is your suggested standard more stringent than what is required for a petition at the second and third stage post-conviction? Absolutely not. All that we're asking is a prima facie showing of a compelling claim of innocence, which would be that the petitioner pleads some evidence to demonstrate each of the elements of the claim, which is some evidence that his evidence is new, some showing that it's material, that it's not cumulative, and that it could potentially change the outcome of the trial. With regard to new, I mean, it was suggested by Justice Thomas, I think that if the defendant knew that the people would not come forward with an affidavit, is that considered new, too, or available? In Ortiz, this court defined new as evidence that has been discovered since the trial. I'm sorry, been discovered what? Since the trial, and certainly that is the definition that has been used in the majority of the cases that are decided by the Supreme Court. And so under that... The fact that Coleman takes responsibility is not new evidence discovered at the end of the trial? The fact that Coleman was the person who did the shooting is not a fact that's new to the defendant. That's a fact that defendant told the authorities prior to his trial in his confession, where he identified Eddie Coleman, or as he referred to him, Maine, as the shooter. It's the evidence that must be new. Isn't that evidence that's new, the fact that he admits to being the shooter? I think the evidence is the fact that Eddie Coleman is the shooter, which is information that defendant already knew. So I think the question as to whether the information is new to defendant, absolutely not. He knew that information long before the trial. How is your standard different from the cause and prejudice test? I would say it's different in two ways, both of which are very significant. The first one is that unlike cause and prejudice, this standard is designed to look at the validity of the claim itself. We're not looking at any external factors. We're looking at whether this claim meets the definition of a valid claim of innocence. It's also different in that it's a lesser standard than cause and prejudice. For instance, if you look at the components of the standard, when we're looking at, for instance, would this probably change the outcome of the trial, that's a considerably lesser standard than what would be required for someone for a showing of prejudice under the cause and prejudice standard. So by designing the standard in the way that it's designed, it alleviates what was the concern of this court in Ortiz, which is that a potentially meritorious claim of actual innocence would be prevented from being presented to the courts. Could you also contrast your standard, then, to the gist standard that is usually applied in a first PC position at the first stage? Well, I think that the gist standard, in terms of the traditional first stage HODGES standard that is used by this court, I think the difference is best explained sort of from a procedural standpoint. When you're looking at your traditional first stage postconviction, there's a statutory right to file that postconviction. So the petitioner does not have an obligation to necessarily show that I should be able to file this petition. So what the HODGES standard is, is a standard of exclusion. So it looks at the petitions, the ones that should be excluded from moving forward. Where we're at here is we're looking at a successive petition. There's no statutory right to file a successive petition. So what we need to look at is, is this a petition which falls within the realm of those which should go forward? So this standard... I'm sorry, I really don't understand the difference between that and gist. So gist says we're going to exclude these, right? Right. These have not met the standard under HODGES for going forward. Okay. What we're looking at here is a standard of inclusion. So which ones fall under the realm of those which meet the requirements in order to proceed to second stage? Let me get back to the Coleman and the other two co-defendants. Did the defendant in this case actually know that these other three were involved in the shooting, or did he just know that he was not involved? At the time that he gave his statement and went to trial? Yes. At the time that he gave his statement and went to trial, he detailed all of the events leading up to and including the shooting. And in that statement that he gave, he detailed all of the other individuals who were involved in it, including the people who were named in the affidavit that was given by Eddie Coleman. Could it be, too, though, I mean, during the giving of the statement, the fact that he was 15 years old and he was relatively allegedly coerced into it, that the officer might have given that information to him, and that was where the information came from? I mean, so actual knowledge can be questionable here. Well, I think that those concerns have been alleviated, because in this case we've had not only a pretrial motion to suppress his confession, we've also had a direct appeal in which he challenged the voluntariness of his confession, and it's had appellate court review on the issue. So in terms of whether his statement was coerced or how the information came about, I think the issue of voluntariness has been given a lot of review, both pretrial and at the appellate court level. So I think that we can be confident that the confession that is before this court is a valid voluntary confession. Specifically in terms of the third and the fourth post-conviction that are before this court, under any standard the decision by both the trial court and the appellate court to deny defendant leave to file these was correct. We've discussed the third petition. The only thing that I would add to that is the fact that it's clear that there was absolutely no pretext and no diligence on the part of defendant in obtaining this affidavit. This affidavit was obtained by another individual named Lawrence Coleman. It would appear from the record that he obtained this affidavit seeking his own post-conviction relief, and while Lawrence Coleman may have been diligent in obtaining the affidavit, his decision to pass it along to defendant does not translate due diligence onto the part of defendant. In terms of the fourth post-conviction, the alibi evidence from Dominique and Kathleen Coleman can in any way be considered newly discovered. It can't possibly be argued that defendant was not aware of his own alibi at the time that he went to trial. And while he claims that he was not able to get this information earlier, there's no indication that he was diligent in any manner in trying to bring the Coleman's to court, such as issuing a subpoena or doing anything other than simply making a request of them. Certainly there were other methods that he could have undertaken, and the level of diligence that's required in order to meet the newly discovered standard is higher than a simple verbal request. If there are no other questions, for those reasons, we would ask the court to affirm the decision of the appellate court in this case. Thank you. Mr. O'Toole. Your Honor, the State says that it wants the most clear standard for circuit courts faced with motions for leave to file. The State offers the least clear standard. It offers a redefinition of frivolous and patently without merit, a phrase that this Court defined exhaustively in Hodges, and went at great length to explain exactly what frivolous and patently without merit means. And then to redefine that phrase in a successive case where frivolous and patently without merit now means prima facie showing of a compelling claim would be the most confusing thing this Court could do. With regards to finality, the State offers without any evidence that actual innocence petitions are now more commonplace. And frankly, I don't know whether that to be true or not. The State offers nothing in its brief to support that allegation, and it doesn't even make that allegation in its brief. But I would say that under any standard, a defendant is still going to have to corroborate his claim with an affidavit. So the idea that more actual innocence claims will be coming in since Ortiz allowed, you know, reaffirmed the constitutional right to file an actual innocence claim is, again, an overstated fear. The defendant's standard, which would require affidavits, would result in no additional actual innocence petitions coming before the circuit courts than any other standard. If it indeed is presented as an actual innocence claim but is not supported or is not in reality an actual innocence claim, it is in fact, for example, a claim of ineffective assistance to counsel, well, the circuit court will be able to dispose of that claim using the cause and prejudice test. There was a question as to whether the State's proposed standard is any different than the second and third stage standards. Well, Your Honors, it's not. The second stage is a purely legal question, whether the petition states a substantial showing of the claim. And there's no qualitative difference between a substantial showing and a compelling claim, which would be the State's standard. In fact, it doesn't appear that there would be any purpose to either the first or second stage if this Court adopts the State's standard because, you know, the State indicates that, well, at the second stage we could present a police report that rebutts the defendant's claim. But the second stage is not an evidentiary hearing. It could not present a police report. It could only present legal arguments as to the deficiency of the claim. And if that's all done before the petitioner even has a chance to file his petition, then that's in violation of the Due Process Clause and it turns the Post-Conviction Hearing Act on its head. With regard to newly discovered evidence, it's simply not true that this Court has used the discovered since trial standard. In People v. Washington, the defendant was given a new trial. This Court upheld the appellate court's decision to give the defendant a new trial on a claim of newly discovered evidence involving a witness that the defense attorney had attempted to contact at the time of trial. That witness then disappeared. When the witness came back, an affidavit was presented. The defendant obviously knew of that witness at the time of trial, yet was still given a new trial. People v. Molstad, that mirrors the co-defendant's affidavit in this case because in Molstad the defendant was allowed to present as newly discovered evidence affidavits from co-defendants about whom the defendant knew at trial, but for whom no amount of due diligence could convince them to testify due to their Fifth Amendment rights. So the notion that newly discovered means was not known about before does not have a tradition in this Court's definition. In reality, it's whether that evidence is available before. And that's really the only equitable definition of newly discovered, whether the defendant can present that evidence. It makes no sense to make the actually innocent prisoner remain in prison simply because factors outside of his control prevent him from presenting to the Court evidence of which he knew while allowing the actual innocent petitioner to go forward when that new evidence has been discovered since trial. And that's what the appellate courts have held as well. People v. Williams involved a case that directly paralleled this case. It was an actual innocence petition where the defendant had given a confession implicating a co-defendant. That co-defendant then came and said, provided an affidavit saying the defendant was not involved. Obviously the defendant knew about this witness at the time of the offense, yet did not present the witness because she was not available to him. Nevertheless, the Williams Court found that to be newly discovered evidence. And finally, with regard to due diligence, the State argues that because Lawrence Coleman was the one who obtained Eddie Coleman's affidavit, Walter failed to make a showing of due diligence. Once again, we're at the initial pleading standards here. I would argue he would only have to make a non-frivolous showing of due diligence. But in any event, there's no authority that says the defendant could not rely on an intermediary, particularly where he's in prison, to obtain an affidavit on his behalf. And that would not be presentable to a court because it wasn't the defendant's personal diligence that obtained that affidavit, even if the defendant had been relying on the third party. And with regard to Dominique and Kathleen Coleman, the alibi witnesses, there's no doubt that Walter has pled due diligence. Both the affiance state that Walter sent both investigators and lawyers to visit with them, that they essentially closed the door in these representatives' faces, and that they refused to come forward earlier. That perfectly aligns with a showing of due diligence. So if there are no other questions, I'd ask this Court to reverse the majority of the appellate court and find that Walter's due process right allows him to file his claims of actual innocence. Thank you. Case number 111711, People v. Edwards, is taken under advisement as agenda number 6. Counsel, we thank you for your arguments. Mr. Marshall, the Illinois Supreme Court stands adjourned until 9.30 tomorrow morning, November 16, 2011.